**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| May Q. Ricchio,<br><br>     Plaintiff,<br><br>  v.<br><br>Dennis R. McDonough, Secretary of the Department of Veterans Affairs,<br><br>     Defendant. | No. 20-cv-1221<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

  Plaintiff May Q. Ricchio, a 65-year-old woman born in China, filed a three-count second amended complaint ("SAC," ECF No. 37) against the Secretary of the U.S. Department of Veterans Affairs ("the Secretary"), in his official capacity, alleging claims of employment discrimination (race) and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., and pay discrimination based on sex under the Equal Pay Act, 29 U.S.C. § 206(d). *See* Def.'s Resp. to Pl.'s Stmt. of Add'l Facts ("RSAF") ¶ 14, ECF No. 53; SAC ¶¶ 9, 49, 62. Her race discrimination and retaliation claims include a claim that she was constructively discharged when she resigned her employment in May 2018. Ricchio has worked for the Department of Veterans Affairs ("VA") since 2001; she is presently an ultrasound technician. SAC ¶ 11; Pl.'s Resp. to Def.'s Stmt. of Material Facts ("RSOF") ¶¶ 5–6, ECF No. 49-1. As pleaded, her claims are based on alleged facts occurring between 2009 and 2021. *See* SAC ¶¶ 13–85. The Secretary moves for partial summary judgment before discovery. He argues that Ricchio released many of her claims when she signed a settlement agreement dated August 7, 2018, and that Ricchio's Title VII claims are partially time barred because she did not timely exhaust her administrative remedies before filing suit. *See* Def.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 42. Ricchio opposes summary judgment for several reasons, including that the settlement agreement is unenforceable and that the Secretary should be equitably estopped from raising a failure to exhaust administrative remedies defense. *See* Pl.'s Mem. Opp'n Mot. Summ. J. 1–2, ECF No. 49-3.

## I. Procedural History

Ricchio filed her original complaint on February 19, 2020, and amended it the next day. Orig. Compl, ECF No. 1; Am. Compl., ECF No. 2. The case was randomly assigned to Judge Norgle.

The docket sheet reflects no further activity by the parties until Judge Norgle ordered them to file a status report by April 21, 2021. Min. Order, Mar. 23, 2021, ECF No. 9. In response, Ricchio's attorney, David Neely, moved for leave to withdraw his appearance. ECF No. 10 (Mar. 25, 2021). Judge Norgle granted Neely's motion and set a deadline of May 7, 2021, for new counsel or Ricchio to appear and file a status report. Min. Orders, Mar. 25, 2021, ECF Nos. 12, 13. That deadline came and went, and nothing was filed.

On September 9, 2021, Judge Norgle issued an order noting that proof of service of the summons and complaint had not been filed and directing Ricchio to show cause by September 29, 2021, why the case should not be dismissed for want of prosecution. Order 1, ECF No. 14. Ricchio filed a written response and process server's affidavit on September 15, 2021. ECF No. 15, 16. Judge Norgle set a deadline for defendant to reply, but he filed nothing. *See* Order 1, Sept. 17, 2021, ECF No. 17.

On May 19, 2022, Judge Norgle entered an order reciting this history and directed Ricchio to file a status report. Order 1, ECF No. 20. Ricchio responded by filing a motion for entry of default judgment. ECF No. 21 (May 29, 2022). She represented that Neely had agreed to file an appearance for her because she had not found other counsel. *Id*. at 2. Neely filed a notice of appearance for Ricchio on June 11, 2022. ECF No. 23. Judge Norgle held two status hearings in June 2022, ECF No. 24 and 25, and defendant appeared on July 5, 2022. ECF No. 26.

On September 11, 2022, Ricchio filed a motion requesting leave to file a second amended complaint. ECF No. 29. Judge Norgle set a briefing schedule. Min. Order, Sept. 12, 2022, ECF No. 30. The case was reassigned to the undersigned judge on October 6, 2022. ECF No. 34. This court granted Ricchio's motion for leave to file a second amended complaint the next day

(the motion was unopposed) and denied Ricchio's motion for entry of default judgment. Min. Order, Oct. 7, 2022, ECF No. 33.

The Secretary filed a motion to dismiss Ricchio's SAC on October 28, 2022. ECF No. 38. The Secretary attached four exhibits to this motion. He argued that the court could consider his exhibits without converting the motion to one for summary judgment, *see* Fed. R. Civ. P. 12(d), but he also offered to "re-submit the briefing as a Rule 56(c) motion" for summary judgment. Mem. Supp. Mot. to Dismiss 6, ECF No. 39. By minute order dated November 1, 2022, the court accepted defendant's offer: "Without implying a view on whether [the] exhibits can be considered on a Rule 12(b)(6) motion, counsel's offer to file a summary judgment motion is accepted because filing such a motion will ensure that both sides have an opportunity to present any facts they deem relevant." ECF No. 40.

The Secretary then filed the pending motion for partial summary judgment. ECF No. 41 (Nov. 15, 2022). The motion has been fully briefed.

## II. Summary Judgment Standard and Local Rule 56.1 Violation

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show that a fact cannot be or is genuinely disputed, a party may cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56(c); N.D. Ill. LR 56.1. A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, "facts must be viewed in the light most favorable to," and all reasonable inferences from the evidence must be drawn in favor of the nonmoving party—but "only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation and footnote omitted). Thus, summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

Under this court's Local Rule ("LR") 56.1, the party moving for summary judgment must file a "supporting memorandum of law" and "a statement of material facts." LR 56.1(a)(1) and (2). In response, the nonmoving party must file a memorandum of law (LR 56.1(b)(1)) and a response to the movant's fact statement (LR 56.1(b)(2)). The summary judgment opponent may also file a "statement of additional material facts." LR 56.1(b)(3). Local Rule 56.1 assists "the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999). It also imposes "some discipline on the pretrial process" and facilitates "an early end to cases that do not require a full trial." *Id*. "Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law," the Seventh Circuit has "repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004)). Whether to enforce LR 56.1 strictly or overlook transgressions is a discretionary decision. *Id*. at 887 (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)).

Throughout their briefing, the parties cite directly to summary judgment exhibits rather than to the Local Rule 56.1 fact statements and responses. *See, e.g.*, Def.'s Mem. Supp. Mot. Summ. J. 2–4, 6–10; Pl.'s Mem. Opp'n Mot. Summ. J. 8–9, 12–13, 15–17. Local Rule 56.1(g) prohibits direct citations to summary judgment evidence in legal memoranda: "When addressing facts," each memorandum of law "must cite directly to specific paragraphs in the LR 56.1

4

statements or responses." LR 56.1(g). The court therefore must disregard all direct citations to summary judgment evidence in the parties' legal memoranda. *See, e.g.*, *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011); *Boyd v. City of Chicago*, 2023 WL 3627708, at *4 (N.D. Ill. May 24, 2023).

### III. Summary Judgment Facts

Except where otherwise stated, the following facts are undisputed for purposes of summary judgment. In 2009, Ricchio's supervisor at the time, a black man named Tony Henderson, violently assaulted her, causing serious physical, economic, and psychological injuries. *See* RSAF ¶¶ 1–2. Workers' compensation insurance covered some of Ricchio's costs but did not cover 100% of her salary for the 11 months she was out of work as a result of the assault. *See* RSAF ¶ 3. Ricchio reported the assault to the VA and to the police, but Henderson was not disciplined. RSAF ¶ 4. Instead, the VA transferred Henderson and Ricchio to different hospitals. RSAF ¶ 4.

Ricchio has requested a bonus each year since the assault. *See* RSAF ¶¶ 5–6. Her supervisor, Carayl Salomon, denied her requests and threatened her with termination, suspension, or a reprimand if she made an Equal Employment Opportunity ("EEO") complaint. RSAF ¶ 6; Aff. of M. Ricchio ("Ricchio Aff.") ¶¶ 8–9, ECF No. 49-4. Salomon also instructed Ricchio not to consult with an EEO counselor about the attack and not to file a claim for lost wages. RSAF ¶ 10 (citing Ricchio Aff. ¶ 5). Salomon does not deny making these statements, but she denies discriminating against Ricchio based on her race. *See* RSAF ¶¶ 6, 10; Aff. of C. Salomon ("Salomon Aff.") ¶¶ 16–18, 23, 26, RSAF Ex. B, ECF No. 53.

In 2018, Ricchio applied to the VA for family medical leave to care for her brother-in-law, who had been diagnosed with a terminal form of cancer. *See* RSAF ¶¶ 7, 9. The VA denied her request. RSAF ¶ 7. Salomon told Ricchio that she would be fired if she attempted to "get around the denial" by taking leave time, so Ricchio decided to resign "[r]ather than risk termination." RSAF ¶¶ 8–9 (partially disputed facts as to Salomon's statements). These facts form the basis for Riccio's constructive discharge claim. Ricchio avers that she did not contact

an EEO officer after she resigned because she was no longer a VA employee. RSAF ¶ 11 (citing Ricchio Aff. ¶ 12).

On August 7, 2018, Ricchio and the VA entered into a confidential settlement agreement (the "settlement agreement"). RSOF ¶ 7; Settlement Agreement, Def.'s Stmt. of Material Facts ("SOF") Ex. A, ECF No. 43. The Secretary draws the court's attention to the following provisions of the settlement agreement:

> 1. The Grievant[, Ricchio,] hereby voluntarily withdraws in their entirety all complaints, grievances, MSPB appeals, and all other causes of action against the VA in any forum, whether formal or informal, including, but without limitation, the grievance involving your resignation to care for your brother-in-law (the "Grievance"). The Grievant agrees to waive any and all rights to further administrative processing of the complaint that is the subject of this Agreement, and all related employment claims already raised or that could have been raised prior to the date of this Agreement, including but not limited to a waiver of: (a) the right to pursue any EEO complaints with the Agency's Office of Resolution Management; (b) the right to pursue any complaints with the Office of Special Counsel; (c) the right to appeal to the Merit Systems Protection Board for an administrative hearing; (d) the right to file an administrative appeal and a civil action or appeal arising from or in connection with the issues and bases raised in the complaint; and (e) all other civil or administrative processing of the complaint or issued related to it in whatever forum with the exception of a claim of breach of this Agreement.
>
> 2. May Ricchio understands she will be appointed to the position of Medical Instrument Technician (Diagnostic Ultrasound), GS-64910 effective no later than September 2, 2018 in accordance with VHA policies and procedures. Ms. Ricchio [sic] salary will be set at GS- 649-10, Step 10 ($80,035.00 per annum). She must meet all pre-employment requirements and provide required documentation for appointment immediately so the Agency can appoint her no later than September 2, 2018. She will be assigned the same tour of duty she previously held prior to her voluntary resignation. Her tour of duty could change based on the needs of the service. All policy and procedure changes will apply to her the same way as other employees within the service. She will be required to attend new employee orientation and she must complete any and all paperwork required of a new employee, including making a decision regarding employee benefits.

Settlement Agreement ¶¶ 1–2.

Regarding the settlement agreement, Ricchio avers in her sworn affidavit that she was reinstated in August 2018 "on the condition that she sign some documents"—documents that she did not understand. *See* RSAF ¶¶ 16–26. Ricchio did not consult an attorney before signing the settlement agreement and had "no input" in negotiating its terms. RSOF ¶¶ 17, 23, 26. Neither her education nor her experience prepared her to negotiate such an agreement. RSAF ¶¶ 19, 21,

6

22. Ricchio also avers that her ability to read the English language is "limited," and the VA did not provide her with a Chinese language translation of the settlement agreement. *See* RSAF ¶¶ 18, 20, 24. The Secretary "admit[s] that Plaintiff's English language [reading ability] is 'limited,'" but disputes the extent of her limitations, pointing to email messages she has written in the English language while employed with the VA and to her affidavit, which does not state that it was prepared with the assistance of a translator. *See* RSAF ¶¶ 20, 24; Email Messages, RSAF Ex. B, ECF No. 53; Ricchio Aff. 1–4.

Ricchio first contacted an EEO officer on February 13, 2019. RSAF ¶ 12. The officer advised her that she could not file a claim about the 2009 or 2018 incidents because she had signed the settlement agreement and because she had not contacted an EEO officer within 45 days of either incident. *See* RSAF ¶ 12. Ricchio avers that she did not contact an EEO counselor sooner because she was unaware that she was a victim of discrimination. RSOF ¶¶ 13, 14, 15 (citing Ricchio Aff. ¶¶ 13, 18, 29). She elaborates in her affidavit:

> Plaintiff is from China where Chinese society openly discriminates against women even if they are more qualified or educated than men; and it is very common in China for women to get abused by men and not report it because there are no laws to protect women from such abuse. The conduct of plaintiff's employer simulated Chinese society and plaintiff did not realize she was the victim of illegal discrimination.

RSAF ¶ 14 (citing Ricchio Aff. ¶ 29) (deemed undisputed because no evidence cited in defendant's response to ¶ 14).

Ricchio subsequently filed two formal EEO complaints of discrimination with the VA's Office of Resolution Management, Diversity and Inclusion. *See* RSOF ¶ 16. She filed her first complaint on May 20, 2019. RSOF ¶ 12; 2019 EEO Compl., SOF Ex. B, ECF No. 43. The 2019 EEO complaint identifies the occurrence date as February 4, 2019, and alleges "Reprimand," "Harassment," and "Hostile Work Environment" on the basis of "Race (Asian)" with an occurrence date of February 4, 2019. RSOF ¶ 12; 2019 EEO Compl. 1. Ricchio filed her second formal EEO complaint of discrimination on September 8, 2021. RSOF ¶ 14; 2021 EEO Compl., SOF Ex. C, ECF No. 43. Ricchio alleged claims of "Harassment," "Hostile Work Environment,"

7

and "Other-Reinstatement of Pay and Benefits" on the basis of "Race (Asian)" with occurrence dates of July 23 and July 28, 2021. RSOF ¶ 15; 2021 EEO Compl. 1. The record does not contain additional details regarding these complaints.

### IV. Enforceability of the 2018 Settlement Agreement

The Secretary maintains that the release clause in the settlement agreement dated August 7, 2018, quoted *supra*, bars Ricchio's Title VII and Equal Pay Act claims to the extent they are based on alleged facts that occurred before that date. Under Seventh Circuit law, "a plaintiff may waive a claim under Title VII (and, by extension, under the Equal Pay Act) as part of a voluntary settlement, provided that her consent to the release was voluntary and knowing." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996) (citing *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 371 (7th Cir. 1989)). "For a release affecting a federal right to be valid, it must not only be valid under state law, but it must also be knowing and voluntary." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974); other citation omitted).

Ricchio does not disagree that she signed the settlement agreement or that she was reinstated as the Secretary promised. *See* RSOF ¶ 7; RSAF ¶ 16. Nor does she dispute that the settlement agreement's release clause is worded broadly enough to cover the claims alleged in her SAC based on the 2009 assault and her 2018 request for medical leave and subsequent resignation. *See* Pl.'s Mem. Opp'n Mot. Summ. J. 9–17. Ricchio argues, however, that the settlement agreement is unenforceable because she received inadequate consideration and because she did not knowingly and voluntarily consent to it. *See id.*

#### A. Consideration

In consideration for her release, the Secretary promised to reinstate her, despite her having resigned to care for her brother-in-law after being denied leave to do so. *See* Settlement Agreement ¶ 2. "In the law of contracts, consideration is relatively easy to show. As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of the consideration." *Wagner*, 95 F.3d at 532 (citing *Scholes v.*

8

*Lehmann*, 56 F.3d 750, 756 (7th Cir. 1995); other citations omitted). A promise to reinstate someone or the surrender of a claim for reinstatement can serve as valid consideration. *See Fleming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 261, 262 (7th Cir. 1994).

      Ricchio quotes a provision of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(f)(1)(D), for the proposition that, "Under Title VII, the employee, in exchange for a waiver, must receive '*additional consideration*' beyond that to which the employee is already entitled." Resp. Opp. Mot. Summ J. 4 (emphasis in original; other citation omitted). This argument fails because Ricchio pleads no ADEA claim, and the additional consideration rule she cites applies by its terms to rights conferred by the ADEA: "An individual may not waive any right or claim *under this chapter* unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f) (emphasis added). Neither Title VII of the Civil Rights Act of 1964 nor the Equal Pay Act is codified in the same chapter of the United States Code as the ADEA. *See* 42 U.S.C. § 2000e et seq.; 29 U.S.C. § 206(d). Ricchio therefore cannot rely on § 626(f) to invalidate the settlement agreement.

      Although Ricchio cites an inapplicable statute, an analogous common law rule exists. *Wagner*, 95 F.3d at 531–32. The common law rule has an important qualifier. A releasing party must obtain more than "something to which [she] was already entitled, as distinct from obtaining payment of a disputed or disputable claim." *Wagner*, 95 F.3d at 532 (quoting *Fleming*, 27 F.3d at 261). The summary judgment record shows that Ricchio's claim was the subject of a reasonable dispute. She concedes that she "does not seek relief under the [Family and Medical Leave Act] because it does not extend benefits to an employee in order to care for her dying brother-in-law." Pl.'s Mem. Opp'n Mot. Summ. J. 7. She argues, however, that VA policy authorized her to take such leave, that she was entitled to it, and that her supervisor "arbitrarily and capriciously denied her request." *Id*. at 7–8. As the sole factual support for these contentions, Ricchio quotes a portion of the allegedly applicable leave policy in her legal memorandum. *Id*. Ricchio did not cite this alleged policy in her response to the Secretary's Local Rule 56.1 statement of facts or in her statement of additional facts, so the court cannot

9

consider it. Even if the policy could be considered, it employs the discretionary word "may" when authorizing an agency to award leave: "An agency may advance up to 104 hours (13 days) of sick leave to a fulltime employee." *Id.* at 7 (quoting alleged policy). Because granting leave under the policy is discretionary on this record, Ricchio has not shown that she had an "indisputable right" to take leave or to reinstatement. *Fleming*, 27 F.3d at 261–62. Her consideration challenge therefore fails because the undisputed evidence in the record shows that she agreed to settle a "disputed or disputable claim." *Wagner*, 95 F.3d at 532 (quoting *Fleming*, 27 F.3d at 261).

### B. Knowing and Voluntary Consent

"To determine whether a party entered a release knowingly and voluntarily," the court "must examine the totality of the circumstances surrounding its execution and consider a number of factors." *Hampton*, 561 F.3d at 716. At the threshold, "the party challenging the release "must come forward with specific evidence sufficient to raise a question as to the validity of the release." *Id*. at 716 (quoting *Pierce v. Atchison Topeka & Santa Fe Ry. Co.* (*Pierce II*), 110 F.3d 431, 438 (7th Cir. 1997)). Factors to be considered include:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Id*. at 716–17 (quoting *Pierce v. Atchison Topeka & Santa Fe Ry. Co.* (*Pierce I*), 65 F.3d 562, 571 (7th Cir. 1995)).

The sixth factor, "the participation of an attorney in negotiating the release," ordinarily "will give rise to a presumption that the waiver was knowing and voluntary." *Pierce II*, 110 F.3d at 438 (citation omitted). No such presumption arises here because it is undisputed that Ricchio did not consult an attorney before she signed the settlement agreement dated August 7, 2018. RSAF ¶¶ 17, 26. This factor therefore favors Ricchio.

10

Several other factors favor Ricchio at summary judgment. The clause in the case at bar broadly released "all related employment claims" Ricchio could have brought. Settlement Agreement ¶ 1. It is undisputed that Ricchio had "no experience negotiating settlements with an employer," and, as a medical technician born abroad, the record supports a finding (this is disputed) that her "educational background did not prepare her to negotiate settlement agreements and waiver of rights with her employer." RSAF ¶¶ 19, 21. Ricchio also avers that she did not have any input in negotiating the terms of the settlement agreement. RSAF ¶ 23 (citing Ricchio Aff. ¶ 23).

The Secretary counters this evidence by pointing to recitals in the settlement agreement to the effect that Ricchio was given the opportunity to consult with an attorney, that she was given 21 days to review the settlement agreement (the record does not show whether she used this time), and that she could rescind the agreement within seven days after signing it. *See* RSAF ¶¶ 16, 23, 25; Settlement Agreement ¶¶ 4, 12. While these points are not without some force, they improperly invite the court to weigh the evidence at summary judgment. For summary judgment purposes, Ricchio's averments that she "did not have the ability to read the release and did not understand the settlement agreement's terms as a linguistic matter before signing it" must be accepted as true. Pl.'s Mem. Opp'n Mot. Summ J. 13 (internal quotation and emphasis omitted); RSAF ¶¶ 18, 25; Ricchio Aff. ¶¶ 17, 21–26.

Applying the voluntariness factors discussed above, the Seventh Circuit has explained that "general releases of claims are valid as long as the signing party has actual knowledge of the claims (or could have discovered those claims with a reasonable inquiry) he or she is giving up." *Hakim v. Accenture U.S. Pension Plan*, 718 F.3d 675, 682 (7th Cir. 2013) (citing *Fair v. Int'l Flavors & Fragrances*, 905 F.2d 1114, 1116 (7th Cir. 1990)). This is not a case in which the plaintiff merely asserts that she could not understand the settlement agreement in conclusory fashion. Cf. *Hampton*, 561 F.3d at 716 (citing *Pierce II*, 110 F.3d at 438) (requiring party challenging voluntariness of release to come forward with "specific evidence" supporting her claim). With favorable inferences, Ricchio explains that she did not understand that she was

being discriminated against, and therefore that she had any discrimination claim to release, because "Chinese society openly discriminates against women even if they are more qualified or educated than men; and it is very common in China for women to get abused by men and not report it because there are no laws to protect women from such abuse." *See* RSAF ¶ 14.

The Secretary does not dispute that Ricchio's command of the "English language is limited." RSAF ¶¶ 20, 24, 25. He disputes the extent of Ricchio's limitations, citing her affidavit filed in this case and email messages written by her while on the job. *See id*. Ricchio's affidavit contains mistakes that, when viewed favorably to her, are consistent with a limited ability to read and write in the English language. By way of illustration, the affidavit begins as follows: "I, MAY RICCHIO, under oath *due* hereby state and affirm as follows." Ricchio Aff. 1 (emphasis added); *see also* Ricchio Aff. ¶¶ 9, 10, 22. The genuine factual dispute concerning the extent of Ricchio's ability to understand the settlement agreement must be resolved in Ricchio's favor at summary judgment. Seen in the light most favorable to Ricchio, the settlement agreement, which consists of 3 pages, is far more complex than the relatively simple email messages and Ricchio's affidavit. *See* Email Messages, RSAF Ex. A, ECF No. 53. Notably, Ricchio states in an email message dated December 23, 2021, that another employee helped write previous email messages. *Id*. at PageID No. 363. It would be reasonable to infer in context that this help was needed due to Ricchio's limited command of the English language. In the same email message, Ricchio writes: "I once again filed a report to EEO because I found the VA emergency request policy is 13day I can to take . Radiology leadership Karen Mixon and Caryl Salomon they are ignoring the policy or maybe them aren't know." *Id*. Viewing the summary judgment evidence as a whole in a light favorable to Ricchio, a reasonable fact finder could certainly believe Ricchio's averments that she did not understand the settlement agreement's language.

Considering the foregoing evidence in its totality and in the light most favorable to Ricchio, genuine factual disputes exist over whether Ricchio "lacked the sophistication to

understand what [she] was reading and giving up in exchange for" her reinstatement.[1] *Id*. at 684; cf. *Yeary v. Innerworkings, Inc.*, 252 F.R.D. 420, 421 (N.D. Ill. 2008) (denying motion for judgment on the pleadings because the extent to which the plaintiff's mental health disorder affected the voluntariness of her assent to a settlement agreement was unclear). Accordingly, the Secretary's motion for summary judgment on its release theory is denied because genuine factual disputes exist as to whether Ricchio's consent to the settlement was knowing and voluntary.

## V. Exhaustion of Administrative Remedies

The Secretary relies on two distinct exhaustion requirements in seeking summary judgment dismissing Ricchio's claims based on the 2009 assault and her 2018 constructive discharge claim. Def.'s Mem. Supp. Mot. Summ. J. 8–11. Ricchio does not contend that she complied with either exhaustion requirement. She instead argues that she should be excused based on equitable considerations. Pl.'s Mem. Opp'n Mot. Summ. J. 14–17.

### A. *Requirement to Contact an EEO Officer within 45 Days*

The first administrative exhaustion requirement applies to covered federal employees, including Ricchio. *See* 29 C.F.R. § 1614.103(b)–(d). A covered federal employee must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1); *see Hambrick v. Kijakazi*, 2023 WL 5319242, at *3 (7th Cir. Aug. 18, 2023); *Johnson v. Runyon*, 47 F.3d 911, 917–22 (7th Cir. 1995). A covered federal employee must exhaust her administrative remedies by complying with the 45-day counseling requirement before she can bring a Title VII lawsuit. *Green v. Brennan*, 578 U.S. 547, 552–53 (2016) (citing 42 U.S.C. § 2000e-16(c)); *see also* 29 C.F.R. § 1614.407.

---

1   For the first time in its reply brief, the Secretary invokes the tender rule. ECF No. 52 at 7. Under this rule, a party like Ricchio who seeks recission of a contract must "return—or at least offer to return—the consideration she received under the contract." *Hampton*, 561 F.3d at 716 (citing *Fleming*, 27 F.3d at 260–61). The Secretary does not explain what would be required to give up Ricchio's right to reinstatement created by the settlement agreement. The court does not reach this argument because the Secretary has waived it. Arguments made for the first time in a reply brief are waived "because they leave [the opposing party] no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (citations omitted).

Construing the 45-day exhaustion requirement, the Supreme Court has held "that a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of [her] resignation, not on the effective date of that resignation." *Green*, 578 U.S. at 564. Ricchio's 45-day limitations period therefore began running in May 2018 when she resigned. RSAF ¶¶ 7–9. It is undisputed that Ricchio first contacted an EEO officer more than nine months later on February 13, 2019. RSAF ¶ 12. Accordingly, Ricchio did not exhaust her administrative remedies by contacting an EEO officer within the 45-day time period set by § 1614.105(a)(1). *See Smith v. Potter*, 445 F.3d 1000, 1007–08 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

### B. Requirement to File a Charge of Discrimination

"In Title VII cases, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013) (citing *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009); other citations omitted). In this context, "the exhaustion requirement is the same for both federal and private employees," so the court may "freely cite to both federal and private-sector employment-discrimination cases" when analyzing the scope of the plaintiff's administrative charge of discrimination. *Id*. at 1100 (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 n.6 (5th Cir. 2006)). The Supreme Court has held that Title VII's charge filing requirement "is not jurisdictional" but is instead a mandatory claim processing rule. *Davis*, 139 S. Ct. at 1849–51.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co*., 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander*, 415 U.S. at 47). Title VII's charge filing requirement has two purposes: "first, it allows the EEOC and the employer an opportunity to settle the matter, and second, it ensures that the employer has adequate notice of the conduct the employee is challenging." *Chaidez v. Ford Motor Co*., 937 F.3d 998, 1004 (7th Cir. 2019) (citing *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009)).

Consistent with the purposes of the charge filing requirement, the Seventh Circuit has held that, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek*, 31 F.3d at 500 (citing *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). Therefore, "all Title VII claims set forth in a complaint are cognizable that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). To satisfy this standard, the administrative "charge and the [federal] complaint must describe the same conduct and implicate the same individuals." *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 926 (7th Cir. 2018), *as amended on denial of reh'g and reh'g en banc* (June 19, 2018) (citing *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005)).

Ricchio filed two EEO charges of discrimination with the VA, one in May 2019 and a second in September 2021. RSOF 12, 14, 16; 2019 EEO Compl.; 2021 EEO Compl. It is undisputed that Ricchio did not include or refer to the facts underlying her August 2009 assault or her May 2018 constructive discharge claims in either charge. In the 2019 charge, she complained of a reprimand and harassment/hostile work environment (non-sexual) occurring on February 4, 2019. 2019 EEO Compl. at 1. She did not include further details, though the form invites the complainant to attach an additional sheet if necessary. *See id*. In her 2021 charge of discrimination, Ricchio claims that she experienced harassment (non-sexual) and a hostile work environment on July 23, 2021. 2021 EEO Compl. at 1. She also wrote that she was seeking reinstatement of pay and benefits as of July 28, 2021. *Id.* Ricchio makes no argument before this court that the facts alleged in either charge are like or reasonably related to the Title VII claims pleaded in her SAC based on the August 2009 assault or her May 2018 constructive discharge claim. *See* Pl.'s Mem. Opp'n Mot. Summ. J. 14–16. By failing to develop any argument concerning the like or reasonably related to test, Ricchio has waived this issue.

15

### C. Equitable Relief from Exhaustion Requirements

In opposing summary judgment, Ricchio focuses on equitable factors and a regulation requiring an agency to extend the 45-day window in specified circumstances.[2] *See* Pl.'s Mem. Opp'n Mot. Summ. J. 14–17. Based on her affidavit, she argues that her supervisors threatened her and told her not to file an EEO complaint, that she did not understand that she had a constructive discharge claim, that she was subjected to an ongoing hostile work environment, and that she "did not understand the gravity" of her waiver of her claims. *See id*. She invokes the doctrine of equitable estoppel as well as the regulation requiring the 45-day time period to be extended "in specified circumstances." *See id.* "The doctrines of waiver, estoppel and equitable tolling" apply to the limitations provisions of employment discrimination claims." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (quoting *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001); alteration omitted). "[I]n the statute of limitations context, the equitable doctrine of estoppel only comes 'into play if the defendant takes active steps to prevent the plaintiff from suing in time.'" *Smith*, 445 F.3d at 1010 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990); other citations omitted). Generally, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

In support of applying equitable estoppel and tolling, Ricchio points to her averments that due to threats and directives from her supervisors she did not believe she could file an EEO

---

2   Federal regulations include a provision requiring the agency to extend the 45-day time limit for contacting an EEO counselor

> when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the [EEOC].

§ 1614.105(a)(2).

complaint. *See* RSAF ¶¶ 10, 13, 14. Accepting these averments as true, the fact remains that Ricchio eventually filed two charges. Neither charge referenced the facts underlying the 2009 assault or the 2018 constructive discharge claim pleaded in Ricchio's second amended complaint. *See* 2019 EEO Compl. at 1; 2021 EEO Compl. at 1. Ricchio cites no conduct by the VA that misled her into omitting allegations concerning either claim from her charges of discrimination. *See* Pl.'s Mem. Opp'n Mot. Summ. J. 14–17. She identifies no steps the VA took to prevent her from including allegations underlying either claim in her charges of discrimination and no extraordinary circumstances that stood in her way. *See id.* The summary judgment record therefore does not support application of equitable estoppel or tolling to excuse Ricchio's violation of the Title VII charge filing requirement.[3] *See Smith*, 445 F.3d at 1010–11.

Because the Title VII charge filing requirement and the rule requiring a federal employee to contact an EEO officer within 45 days are distinct exhaustion requirements, the court need not determine whether Ricchio's violation of the latter rule is excusable. For the foregoing reasons, Ricchio's Title VII claims based on the alleged 2009 assault and Ricchio's alleged constructive discharge in May 2018 are dismissed for failure to comply with the charge filing requirement.

### VI. Conclusion

For the reasons stated, the Secretary's motion for summary judgment is granted in part and denied in part. Plaintiff's Title VII claims are dismissed to the extent they are based on facts

---

3  District courts in the Seventh Circuit have also found that the failure to file a charge can sometimes be excused where the plaintiff included facts on which her lawsuit is based in a questionnaire filed with the EOOC, where "(1) the plaintiff was not represented by a lawyer at the EEOC charge stage, (2) there is evidence that the EEOC engaged in inequitable conduct, (3) the questionnaire was filed at the same time as the charge, or (4) the questionnaire was signed under oath." *Malin v. Hospira, Inc.*, 948 F. Supp. 2d 875, 885 (N.D. Ill. 2013), *rev'd on other grounds, aff'd in relevant part*, 762 F.3d 552, 561 (7th Cir. 2014) (citing *Brindley v. Target Corp.*, 761 F. Supp. 2d 801, 806 n.6 (N.D. Ill. 2011)). "These considerations must also be balanced against whether the employer had notice of the additional claims." *Id.* (citing *Fantozzi v. Winston & Strawn LLP*, 2011 WL 3704930, at *5 (N.D. Ill. Aug. 17, 2011)). Nothing in the summary judgment record indicates Ricchio attached a questionnaire to either of her EEO charges. *See* 2019 EEO Compl.; 2021 EEO Compl. Nothing in the record indicates that the Secretary was put on notice at the EEO charge phase that Ricchio was asserting claims based on the August 2009 assault or her alleged constructive discharge in May 2018. The summary judgment record therefore does not support excusing Ricchio's violation of the Title VII charge filing requirement on the equitable grounds recognized by courts in the Seventh Circuit. *See Malin*, 948 F. Supp. 2d at 887–86.

not alleged in her EEO charges of discrimination filed with the VA, including Ricchio's allegations stemming from an assault in 2009 and her alleged constructive discharge in May 2018.

Dated:  September 18, 2023 /s/ Joan B. Gottschall  
United States District Judge